

**IT IS ORDERED as set forth below:**

**Date: November 29, 2021**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE: | |
| CALLIE ELIZABETH CLARK,<br>        Debtor. | CASE NO. 16-41906-BEM<br><br>CHAPTER 7 |
| CALLIE ELIZABETH CLARK,<br>        Plaintiff,<br>v.<br>WELLS FARGO BANK, N.A., et al.,<br>        Defendant. | ADVERSARY PROC. NO.<br>18-4002 |

## ORDER

This adversary proceeding came before the Court for a trial on September 23, 2021 (the "Trial"). John McCullough, counsel for Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), and David Cox, counsel for the Plaintiff Callie Clark were present at Trial. Prior to the Trial, Plaintiff and Wells Fargo (collectively, the "Parties") filed a consolidated pretrial order (the "Pretrial Order") stipulating that the debt owed to Wells Fargo was a student loan (the "Student

Loans" or the 'Debt") within the meaning of and contemplated by 11 U.S.C. § 523(a)(8). [Doc. 57, Ex. C]. The sole issue at Trial was whether the Debt owed to Wells Fargo is excepted from discharge pursuant to 11 U.S.C. § 523(a)(8). [Doc. 1].

Discover Bank, N.A. ("Discover), Resurgent Capital Services ("Resurgent"), the United States Department of Education (the "Dept. of Education"), and Federal Loan Servicing were also named as defendants in the amended complaint filed in this proceeding. (the "Complaint"). [Doc. 5]. Prior to Trial, Plaintiff voluntarily dismissed Federal Loan Servicing. [Doc. 35, 38]. The Dept. of Education was also dismissed prior to Trial pursuant to a joint motion by Plaintiff and the Dept. of Education. [Doc. 52, 53]. Discover and Resurgent failed to respond to the Complaint and the Clerk entered default against both Defendants on May 16, 2019. At the close of evidence at Trial, Plaintiff made an oral motion for default judgment against Discover and Resurgent. [Doc. 42, 43].

During the Trial, the Court heard testimony and admitted Wells Fargo's exhibits 1 through 25 ("D. Ex. ___"). After careful consideration of the pleadings, the evidence presented and the applicable authorities, the Court issued an oral ruling at the conclusion of the Trial finding that the Debt owed to Wells Fargo is dischargeable and stated that a more comprehensive written ruling along with a ruling on the motion for default judgment would follow. Accordingly, the Court now enters its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I).

I. **Findings of Fact**

The Parties stipulated to the following facts prior to Trial: In 2009 through 2011, Plaintiff, as a student borrower, entered into a series of nine (9) separate Wells Fargo Education Connection Loans totaling $45,240.00. [Doc. 57, Ex. C ¶ 2, Trial Ex. 1-9]. Each of the Student Loans was co-signed by Connie Clark, Plaintiff's mother. Robert Clark, Plaintiff's father, co-

2

signed one of the Student Loans as well. *Id.* A separate proceeding is pending to determine whether Plaintiff's parents may discharge their liability on the Student Loans.[1] Each of the Student Loan Agreements evidence a student loan made to Plaintiff by Wells Fargo within the meaning of and as contemplated by 11 U.S.C. § 523(a)(8). [Doc. 57, Ex. C ¶ 4]. Wells Fargo currently holds all right, title and interest to each of the Student Loans. *Id.* The original total balance of the Student Loans was $45,240. [Doc. 57, Ex. C ¶ 2]. The total payments made on the Loans was $2,488.29. *Id.* The last payment made on the Student Loans was on December 15, 2017, by Plaintiff. *Id.* The unpaid balance outstanding on the Student Loans as of February 3, 2020, including interest accrued through September 2, 2015, when Wells Fargo stopped accruing interest, is $63,679.93. [Doc. 57, Ex. C ¶ 3].

Plaintiff has successfully discharged all her unsecured non-student loan obligations listed on Schedule E/F of her Chapter 7 Schedules. [Doc. 57, Ex. C ¶ 8]. Plaintiff scheduled $170,751 in unsecured debt, of which $163,249 (96%) comprised student loans, and approximately $49,793 appears to have been or will be discharged by default as explained in Part III below[2]. [Doc. 57, Ex. C ¶ 8]. The Dept. of Education has been dismissed without prejudice as Plaintiff will apply for one of its "flexible payment options." [Doc. 57, Ex. C ¶ 7]. The Repayment Period for each of the subject Wells Fargo Student Loans is fifteen (15) years from the date payments were required to begin (the "Repayment Period"). [Doc. 57, Ex. C ¶ 9]. Plaintiff's payments were required to begin no later than five (5) years after the first disbursement. *Id*. Assuming a ten-year repayment period, the monthly installments of principal are approximately $530.00 per month to

---

[1] See AP No. 18-04012. The two adversary proceedings were tried together for purposes of efficiency and a decision in the parents' case will be made by separate order.
[2] The Parties stipulated that at the time of Trial the majority of Plaintiff's student loan debt had been discharged by agreement or default. However, the Court notes that the evidence does not support the calculation of a majority in amount as Wells Fargo is owed $63,679.93, Discover and Resurgent are owed $49,793, none of which was discharged as of the Trial in this proceeding. Further the Court points out that a discharge by default will occur after the Court rules on the oral motion for default judgment made at Trial.

3

pay the Student Loans. *Id.* At Trial, the Parties stipulated that the loan repayment period is ten (10) years. This stipulation does not necessarily reflect the full terms of the underlying Student Loan documents, which provides that the Repayment Period begins the day after the "Interim Period" ends and defines the Interim Period as the earlier of six months after the student ceases to be enrolled in a qualified school or five years after the date of the first disbursement. [D. Ex. 1-9, p. 2].

At Trial, Plaintiff testified that she attended Berry College from 2008 to 2011 and that she graduated in December of 2011 with a degree in ethics and policy. The Student Loans she obtained paid tuition, while her parents paid for all other school and living expenses. Plaintiff lived at home with her parents while she attended college. Plaintiff took the LSAT because she intended to go to law school and become a human rights attorney. Specifically, Plaintiff was interested in doing field work related to human rights. Although Plaintiff experienced mental health issues before college, indeed her mother testified to severe mood swings with high highs and low lows beginning when Plaintiff was 12, the seriousness and pervasiveness of her mental health conditions became more pronounced while she was in college and have continued since. At the time Plaintiff filed her chapter 7 bankruptcy case, she was twenty-six years old.

Cheryl Melton ("Melton") testified at Trial as well. Melton is a licensed marriage and family therapist and has worked in the mental health field for approximately thirty years. Melton began providing therapy services to Plaintiff in 2010 for anxiety and depression. Plaintiff had been diagnosed with anxiety and Asperger's Syndrome prior to seeing Melton in 2010. Plaintiff was ultimately diagnosed with adult-onset obsessive compulsive disorder ("OCD") in 2015 and bipolar I disorder with mixed episodes in 2016.

Melton explained that both OCD and bipolar I disorder can be treated with medication, which Plaintiff takes; however, there is no medication available for treatment of

Asperger's Syndrome. Each of these conditions is exacerbated by stress. Plaintiff's moods are unstable with bipolar I disorder; she can shift from a depressed state to a manic state suddenly. It is even possible for Plaintiff to experience both mental states at the same time, known as a mixed episode, which is very confusing for anyone present. Although Plaintiff makes choices in her life, she has no control over her mental state and the cycle of mania and depression or when she will be beset by obsessive thoughts. Plaintiff experiences feelings of terror and overwhelming anxiety because of her OCD and she is consumed with feelings of shame and worthlessness because of the direct and indirect effects of her condition on her parents. Namely, that they now shoulder the burden of her care, finances, and Student Loans.

Unfortunately, manic episodes are a response to feelings of low self-worth and result in over-confidence which is detrimental to Plaintiff. In Plaintiff's periods of mania, she will apply for jobs she cannot fulfill or engage in activities that are dangerous, have the potential to cause her harm and cause stress, thereby increasing her chances of symptoms with a depressive episode. During an episode of mania, employers see that she cannot be responsible for the tasks assigned to her and ultimately terminate her employment. When her endeavors following a manic episode are unsuccessful, she feels intense rejection that leads to extremely depressive episodes which include suicidal thoughts and attempts. Plaintiff testified that prior to taking medication these manic and then depressive episodes occurred on a six-month cycle.

In addition, Asperger's Syndrome makes it difficult for Plaintiff to interact with others; Melton testified that Plaintiff has an unusual manner of speaking in which she is talkative and painstakingly detailed while being unable to pick up on social cues. The Court notes that Plaintiff's testimony was detailed, but not excessively so. The Court found Plaintiff to be intelligent, credible and sincere in her testimony. Plaintiff's combination of OCD and Asperger's Syndrome make it difficult to navigate the outside world. When Plaintiff experiences an obsessive

5

episode it prevents her from functioning as she is plagued with disruptive thoughts that in her worst states, prohibits her from simple tasks like driving because she is consumed with fear that she will hurt someone or something such as her cat.

Before taking medication for bipolar I disorder and OCD, Plaintiff was suicidal. After beginning medication in 2016, Plaintiff has had less determination to end her life and has felt some improvement; on occasion she has thought life was worth living. She is committed to learning about her conditions and seeking out any tools and treatments that could help. She is steadfast in trying to keep up with treatment modalities, nutrition, exercise, and anything she can do to make the medication and talk therapy as successful as possible. However, Plaintiff still suffers from depression, OCD, and anxiety, even if some of the symptoms of these conditions are less prominent with treatment. Adjustments to the medications to provide further relief have been unsuccessful as mixed depressive episodes are difficult to treat and have the highest rates of suicide. There is no cure for Plaintiff's conditions, and it is unknown but unlikely that she will experience improvement from her present condition. Medication has assisted Plaintiff in reducing her symptoms but, it has not eliminated them. She will require treatment for the rest of her life.

Plaintiff does not currently, nor has she ever, lived independently from her parents. Her parents support her entirely as she has had no income since 2015 or 2016.[3] This support includes, but is not limited to housing, a car, car insurance, health insurance through the public insurance exchange, prescriptions, food, clothing, and therapy. Both Plaintiff and Melton testified that Plaintiff enjoys solitude and would benefit from living by herself, but that she would still need

---

[3] Plaintiff testified that she has not worked in "any real sense" since the end of 2015. She also testified that she had her first job at age 15 and the last just before her "crash" when she got help. In the Pretrial Order the parties stipulated that the last payments on the Student Loans were made in 2017. The Court infers that the help referred to occurred in 2016 with the diagnosis of bipolar I disorder and beginning treatment with medicines, but it is possible this refers to the onset of OCD in 2015.

to be with her parents when a crisis arises. Plaintiff testified further that she cannot afford to live elsewhere.

Plaintiff has had approximately twenty-four jobs since she was fifteen years old, but none have been long term as Plaintiff's episodic mental health symptoms are not suited to the workplace. Once, Plaintiff applied for over forty jobs in forty-eight hours. Melton testified that she does not believe Plaintiff will ever be able to maintain stable, long-term employment. Melton testified that it is possible Plaintiff could work short-term or part-time jobs that would allow flexibility for Plaintiff to remain at home when she has bipolar or OCD episodes. Plaintiff wants very much to work and finds her situation very frustrating. Plaintiff testified that work is the one thing that gives her a sense of worth and she would very much like to reduce the burden she puts on her parents. Plaintiff currently drives for an animal rescue organization, but that position does not provide income. It never occurred to her that she would not be able to pay her student loans. Even at her worst, Plaintiff did not think she would be continually unemployed.

## II. Conclusions of Law

The issue in this proceeding is whether Plaintiff's student loans are dischargeable pursuant to 11 U.S.C. § 523(a)(8). Section 523(a)(8) of the Bankruptcy Code contains a "clear and self-executing requirement for an undue hardship determination ...." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275, 130 S. Ct. 1367, 1380 (2010). The Eleventh Circuit has adopted the *Brunner* test to determine undue hardship, which requires Plaintiff to prove the following by a preponderance of the evidence[4]:

> (1) That the debtor cannot maintain, based on current income and living expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

---

[4] The Parties agree that this matter is governed by the standard established in *Brunner*.

7

> (2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) That the debtor has made good faith efforts to repay the loans.

*Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1241 (11th Cir. 2003); *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987); *Educational Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1324-25 (11th Cir. 2007).

### A. Minimal Standard of Living

Under the first prong of the *Brunner* test, Plaintiff must prove that she will be unable to "afford the basic living necessities if forced to repay the loan." *Brunner*, 831 F.2d at 396; *Gordon v. U.S. Dep't. of Educ. (In re Gordon)*, Adv. Proc. No. 07-09049-MGD, 2008 WL 5159783, at *5 (Bankr. N.D. Ga. Oct. 10, 2008) (Diehl, J.). The analysis requires a reasonable evaluation of daily expenses necessary to live; "shelter, basic utilities, food and personal hygiene products, vehicles, and the costs associated with a vehicle, health insurance, and some source of recreation" are deemed necessary for a minimal standard of living. *Gordon*, 2008 WL 5159783, at *6; *Hill v. Educ. Credit Mgmt. Corp. (In re Hill)*, 598 B.R. 907, 916 (Bankr. N.D. Ga. 2019) (Sigler, J.).

Judge Sigler evaluated a similar situation in *In re Hill*, in which the plaintiff suffered from post-traumatic stress and bipolar disorders with periods of psychosis that at times rendered her institutionalized or homeless. *See generally Hill*, 598 B.R. at 916. In *Hill,* the plaintiff relied solely on income from monthly social security disability payments and food assistance programs, as she could only sustain volunteer, unpaid employment positions. Judge Sigler found that the amount of income the plaintiff received would not fund any loan repayment as the plaintiff could barely afford what could be considered a "minimal" standard of living on federal assistance.

8

Likewise, here, there is no dispute that Plaintiff does not have the ability to maintain a minimal standard of living and repay her Student Loans. Wells Fargo did not argue that any repayment plan would be feasible, nor did Wells Fargo argue that Plaintiff would be able to make payments and maintain a minimal standard of living. Rather, Wells Fargo stated that, after Trial, it believed the issue of dischargeability was really limited to the adversary proceeding between Plaintiff's parents and Wells Fargo.

The Court agrees with Wells Fargo that Plaintiff does not have the ability to support herself, is entirely dependent on her parents for support and cannot maintain a minimal standard of living.

### B. Persistent State of Affairs

Under the next prong of the *Brunner* test, Plaintiff must prove that "she cannot maintain a minimal standard of living for a significant portion of the Repayment Period if the loans are not discharged" due to circumstances not within her control. *Hill*, 598 B.R. at 918 (quoting *Gordon*, 2008 WL 5159783, at *7). While the wording is unfortunate, the standard assumes a "certainty of hopelessness" that Plaintiff will not experience an improvement in her financial condition. *Id.* (quoting *Douglas v. Educ. Mgmt. Corp. (In re Douglas)*, 366 B.R. 241, 256 (Bankr. M.D. Ga. 2007)). This may include an evaluation of factors such as a "mental disability, lack of usable or marketable job skills, and lack of assets that could be used to repay the loan." *Mosley*, 494 F.3d at 1326.

Again, like the plaintiff in *Hill*, the evidence at trial was that Plaintiff has no control over her mental state. It is undisputed that while medication can aid Plaintiff, she is on medication and still experiences the severe and debilitating symptoms of her mental conditions. The uncontroverted testimony was that she will almost certainly suffer from some, if not all, of these conditions for the rest of her life. Any improvement in her mental or financial situation is purely

speculative. Since graduating from college ten years ago, Plaintiff has been unable to find employment and has not had income in approximately six years. Even when she was employed, her income was not sufficient to allow her to live independently, and there is no reason to believe this will change.

Plaintiff has no assets and lacks usable and marketable job skills, which is not reflective of Plaintiff's efforts. If Plaintiff were to become gainfully employed the evidence was uncontroverted that, at best, Plaintiff may be able to work a part time position that is flexible so that when she is suffering from a manic or depressive episode or otherwise unable to work, she could still maintain employment. The question before the Court is not one of employability but an inability to make loan payments and maintain a minimal standard of living through the Repayment Period. *Hill*, 598 B.R. at 919. Even though the precise timing of the Repayment Period was not discussed at Trial, and it is not clear to the Court whether the Repayment Period has already begun or will begin upon the entry of a final order in this case, the specific timeframe is irrelevant in this inquiry. Based on the evidence, the Court finds that Plaintiff has satisfied the burden of showing that because of conditions beyond Plaintiff's control, she will be unable to maintain a minimal standard of living for at least 10 years, which is a significant portion of the 10-year Repayment Period regardless of when it starts or started.

### C. Good Faith Efforts to Repay the Student Loans

Finally, Plaintiff must prove that she made a good faith effort to repay her Student Loans. This is determined by measuring her efforts "to obtain employment, maximize income, and minimize expenses," and as in the prior prong, not a condition of her own making either willfully or negligently. *Mosley*, 494 F.3d at 1327. Once more, the evidence was uncontroverted and the Parties stipulated to the payments Plaintiff made on the Student Loans. [Doc. 57, Ex. C ¶ 2]. The

last payment Plaintiff made was in 2017; however, when she was employed she would send her entire paycheck to Wells Fargo which was only possible because her parents were supporting her.

Many courts have considered whether failing to make any payments on a student loan prohibits a finding of good faith and have generally found that such a failure does not constitute a lack a good faith. *See Mosley*, 494 F.3d at 1327; *Hill*, 598 B.R. at 921-22; *Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302, 1311 (10th Cir. 2004). In contrast, the fact that Plaintiff did make payments to Wells Fargo supports a finding of good faith. Furthermore, the Court is persuaded that Plaintiff used the Student Loans to obtain a degree that she believed would allow her to obtain employment in her chosen field. Plaintiff has held at least 24 jobs and has applied for hundreds more. Her desire to be gainfully employed, repay the Student Loans and live independently was evident in her sincere and credible testimony. As a result, the Court finds that the final prong of the undue hardship analysis is satisfied because Plaintiff has made good faith efforts to repay her Student Loans.

### III.     Default Judgment as to Discover and Resurgent

As previously discussed, both Discover and Resurgent were served with the Complaint and failed to respond. [Doc. 3, 9, 10, 16, 17, 21]. An entry of default was entered against both parties on May 16, 2019. [Doc. 42, 43]. At Trial, Plaintiff proffered that the evidence was also applicable to Discover and Resurgent, and that Plaintiff satisfied all three elements of the *Brunner* test such that considering Discover and Resurgent's failure to respond, Plaintiff was entitled to judgment in her favor.

Default judgments are governed by Federal Rule of Civil Procedure 55(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7055. Whether to enter default judgment is within the discretion of the Court. *Hays v. Wellborn Forest Prods., Inc. (In re Spejcher)*, No. 06-6347, 2006 WL 6592065, at *1 (Bankr. N.D. Ga. Oct. 30, 2006) (Massey,

11

J.) (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985)). To warrant entry of a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When a defendant fails to answer, the plaintiff's well-pleaded factual allegations are deemed admitted. *Id*. Facts that are not well pleaded and conclusions of law are not deemed admitted. *Id.* Therefore, the Court must determine whether Plaintiff's well-pleaded factual allegations are sufficient to justify entry of judgment. *See EFS Inc. v. Mercer (In re Mercer)*, No. 13-3031, 2013 WL 3367253, at *1 (Bankr. M.D. Ala. July 5, 2013).

Plaintiff alleges that the loans held by Resurgent and Discover are educational loans made, insured or guaranteed by a governmental unit. [Doc. 5, ¶1]. Plaintiff further alleges in the Complaint that Resurgent, upon information and belief, acquired from Sallie Mae and is now the holder of a "Smart Option Student Loan" which was taken out for Plaintiff. [Doc. 5, ¶6]. This loan has a current balance of $3,600.00, with monthly payments due of approximately $367.00. *Id.* Discover, upon information and belief acquired from Citibank, N. A. and now holds three student loans which were taken out by Plaintiff with a current total balance of approximately $47,600.00 and monthly payments due of approximately $456.00. [Doc. 5, ¶ 7].

The evidence at Trial demonstrates that Plaintiff does not have the ability to repay her Student Loans, much less maintain a minimal standard of living, such that the first prong of the *Brunner* test is satisfied. If Plaintiff cannot afford the loan payments to one defendant for part of her student loans, she certainly cannot afford to pay additional amounts. The second prong of the *Brunner* test is also met, as the reasoning and analysis finding Plaintiff's state of affairs will remain persistent throughout the loan repayment period, regardless of what the repayment period is for Discover and Resurgent, is the same. Finally, while the nature and duration of the payments that were potentially made to Discover and Resurgent are unknown, an assumption that no

12

payments were made does not preclude a finding of good faith. As stated previously, Plaintiff desired to repay her loans, used her entire paycheck to do so at times, and strives earnestly to make progress in her mental health. Accordingly, the final prong of the undue hardship analysis is satisfied as to Discover and Resurgent because Plaintiff has made good faith efforts to repay her Student Loans.

Based upon the allegations in the Complaint and the evidence at Trial, the Court concludes that Plaintiff is entitled to judgment by default against Discovery and Resurgent.

## IV.   Conclusion

Plaintiff is an intelligent, educated individual who endeavored to obtain an education that would enable her to pursue a career as a human rights lawyer. Unfortunately, just as her independent life was beginning, she became plagued by the life-altering effects of adult-onset OCD and the continued effects of anxiety, bipolar I disorder, and Asperger's Syndrome. Plaintiff has struggled to manage suicidal tendencies and establish stability for the last decade and has demonstrated by a preponderance of the evidence that she cannot obtain the type of employment that would enable her to maintain a minimal standard of living while repaying her Student Loans during the applicable repayment period. This situation shows no signs of relenting. Because of this, repayment of Plaintiff's Student Loans constitutes an undue hardship under 11 U.S.C. § 523(a)(8) and the Student Loans are dischargeable. Further the student loans owed to Discover and Resurgent are dischargeable by default. Accordingly, it is

**ORDERED** that the Debt owed to Wells Fargo Bank, N.A. is dischargeable. It is further

**ORDERED** that the student loan debts owed to Discover Bank, N.A. and Resurgent Capital Services are dischargeable and judgment by default will be entered against Discover Bank, N.A. and Resurgent Capital Services.

Separate judgments will be issued.

**END OF ORDER**

**Distribution List**

Callie Clark
20 Cornerstone Dr
Rome, GA 30165

David A. Cox
David A. Cox Law, LLC
2870 Peachtree Road #183
Atlanta, GA 30305

John G. McCullough
Aldridge Pite, LLP
Suite 500, Fifteen Piedmont Center
3575 Piedmont Road, N.E.
Atlanta, GA 30305

Discover Bank
Corporation Trust Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

Roger Hochschild, CEO
Discover Bank
502 E Market St
Greenwood, DE 19950

Resurgent Capital Services
c/o Registered Agent
Corporation Service Company
2 Sun CourtSuite 400
Peachtree Corners, GA 30092